IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

T. R. O'CARROLL,                              )
                                              )
                    Plaintiff,                )
                                              )
v.                                            )        Case No. CIV-10-232-D
                                              )
OKLAHOMA BOARD OF COUNTY                      )
COMMISSIONERS; *et al*.,                      )
                                              )
                    Defendants.               )

## **O R D E R**

Before the Court are motions for summary judgment filed by all remaining defendants pursuant to Fed. R. Civ. P. 56: Oklahoma County Board of County Commissioners [Doc. No. 130]; John Whetsel in his official capacity as Sheriff of Oklahoma County [Doc. No. 131]; Vicki Stanford in her individual capacity [Doc. No. 132]; and Thomas Urioste in his individual capacity [Doc. No. 133].[1]  The movants seek a judgment as a matter of law in this civil rights action under 42 U.S.C. § 1983 arising from Plaintiff's confinement in the Oklahoma County Detention Center or jail.  The motions are fully briefed and at issue.

### **Background**

Plaintiff T. R. O'Carroll claims his constitutional rights were violated by detention officers during his confinement as a pretrial detainee in the Oklahoma County jail in March, 2008.  Plaintiff brings § 1983 claims against Oklahoma County by naming as defendants the Board of County

---

[1]  The other named defendants – John Whetsel in his individual capacity, the City of Oklahoma City, William Citty, Wesley Cadena, and Patrick Byrne – have been voluntarily dismissed pursuant to Fed. R. Civ. P. 41(a).  *See* Joint Stipulation of Dismissal [Doc. Nos. 127 & 135]; Order of June 28, 2011 [Doc. No. 128].

Commissioners and John Whetsel in his official capacity as sheriff.[2]  Plaintiff also brings § 1983 claims against an individual officer and a jail supervisor allegedly involved in the incident.  As pertinent here, the First Amended Complaint alleges that these defendants, Officer Urioste and Sergeant Stanford, subjected Plaintiff to an unconstitutional strip search and an excessive use of force without justification, in violation of the Fourth Amendment.  Plaintiff alleges that the County and Sheriff Whetsel were deliberately indifferent to his health and safety due to an "open and notorious" practice of "the use of strip searches by jailers and supervisors as a discipline tool." *See* First Am. Compl. [Doc. No. 57], ¶ 84.

Defendants seek summary judgment on all claims.  The County and Sheriff Whetsel contend that Plaintiff cannot establish a Fourth Amendment violation, and that no basis exists to impose liability on the County for any constitutional violation that occurred because no official policy or custom caused Plaintiff's alleged injuries.  The individual defendants assert they are entitled to qualified immunity because Plaintiff cannot show their conduct violated a constitutional right that was clearly established at the time of the alleged violation.  Alternatively, all defendants contend that Plaintiff cannot recover punitive damages.

### Standard of Decision

Summary judgment is proper "if the movant shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is genuine if the evidence is such that

---

[2]  "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *accord Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 544 (1986).  "A suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same." *Watson v. City of Kansas City*, 857 F.2d 690, 695 (10th Cir. 1988); *see also Hinton v. City of Elwood*, 997 F.2d 774, 783 (10th Cir. 1993).

a reasonable jury could return a verdict for either party. *Id*. at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id*. If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, then all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but may consider other materials in the record." *See* Fed. R. Civ. P. 56(c)(3); *see also Adler*, 144 F.3d at 672. The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### Undisputed Facts [3]

On March 8, 2008, Plaintiff was arrested by the Oklahoma City Police Department and booked into the Oklahoma County jail. Sheriff Whetsel is responsible for operation of the jail, and has adopted policies and procedures that are consistent with standards promulgated by the American

---

[3] This statement includes material facts presented by both parties that are supported as required by Fed. R. Civ. P. 56(c)(1). If a party has asserted a fact, or asserted that a fact is disputed, but has failed to provide such support, the assertion is disregarded. All facts are stated in the light most favorable to Plaintiff.

Correctional Association and the Oklahoma State Department of Health.  These policies, which specifically address matters such as the use of force and strip searches, were known to Officer Urioste and Sgt. Stanford at the time of Plaintiff's arrest.  Prior to that date, both officers had passed a training academy that includes testing to show proficiency in these policies.  During 2008, the jail booked and detained more than 44,000 inmates.

Plaintiff first encountered Officer Urioste at the intake window.  Officer Urioste took Plaintiff's property and boots, and performed a pat-down search.  Plaintiff was uncooperative and refused to give his social security number.  Officer Urioste has testified that Plaintiff was verbally aggressive, but Plaintiff denies this characterization.  It is undisputed that Plaintiff was not physically aggressive; he did not push, hit, or touch any officer in a violent manner.  Officer Urioste escorted Plaintiff to a safety cell to be "dressed out," meaning to exchange his clothes for jail-issued clothing.  The door to the cell was left partially open so that Sgt. Stanford could supervise the process while standing outside of the cell; she remained out of view when Plaintiff was unclothed. The parties dispute whether Plaintiff refused to comply with verbal instructions given by the officers.  However, it is undisputed that Officer Urioste and another male officer, Matthew Sandburg, "dressed out" Plaintiff by physically removing his clothes.  Plaintiff characterizes this procedure as a "strip search," performed without justification or any suspicion that he was carrying contraband.  Defendants deny the procedure constituted a strip search but, instead, contend it was a clothing change-out procedure that is utilized when a detainee refuses to cooperate.

When the process began, Plaintiff was handcuffed with his hands behind his back.  He was ordered to kneel and then to lie down.  The parties dispute whether the officers helped Plaintiff to the ground or whether, according to Plaintiff, "on the third instruction, [he] just fell forward and caught [himself] with [his] shoulder the best [he] could."  *See* O'Carroll Dep. [Doc. No. 144-7],

4

81:9-11.  After Plaintiff was lying face down on the ground, Officer Urioste placed Plaintiff in a three-point hold or restraint position, which allows the officer to maintain control and obtain compliance by applying pressure if the person resists.  Officer Sandburg maintained control of Plaintiff's legs.  The officers then physically removed Plaintiff's clothes, including his underwear. During the procedure, Plaintiff was maintained in a face-down position except when he was rolled over onto a hip to unbutton his jeans.  After Plaintiff was naked, the officers took his clothes and exited the cell, leaving an orange shirt and pants for him to put on himself.  In addition, although Plaintiff's account is disputed, Plaintiff has testified that before releasing him from the ground, Officer Urioste grabbed Plaintiff's head from behind by the hair, raised his "face up just a little bit," and then "pop[ped]" his face into the concrete.  *See id.* 85:12-15.  Sgt. Stanford has denied witnessing any excessive use of force.  She supervised Plaintiff's clothing change-out by listening from outside the door, and has testified that she did not see his body exposed.

Plaintiff was released from the jail later the same day.  Medical records show that Plaintiff was examined at a hospital  emergency room that day, and was diagnosed with a rib fracture and contusions to his left shoulder, nose and back.  Plaintiff reported during the examination that he "was roughed up by police officers, being somehow hit in the nose, ribs, shoulder and back" during his arrest, and then "taken to the County Jail and further assaulted in a back room where his clothes were stripped from him."  *See* Pl.'s Supp. Combined Resp. Def. Sheriff Whetsel & Okla. County's Mot. Summ. J., Ex. 10 [Doc. No. 144-10] at 2.

With his brief in opposition to summary judgment in favor of the County, Plaintiff has presented evidence that the County was notified by the United States Department of Justice (DOJ) in July, 2008, of conclusions reached following an investigation of jail conditions during several visits in 2003 and a final visit in April, 2007.  DOJ concluded that certain jail conditions were

constitutionally inadequate.  One area of deficiency found by DOJ was a prevalent use of force by jail staff.  DOJ expressed concern that because of "overcrowding and inadequate staffing . . . , Jail staff frequently resort to the use of force to control events."  *See* Pl.'s Supp. Combined Resp. Def. Sheriff Whetsel & Okla. County's Mot. Summ. J., Ex. 3 [Doc. No. 144-3] at 8.  DOJ acknowledged that "such uses of force are not *per se* inappropriate," but in its expert's opinion, there was "an inordinately high number" of reported use of force incidents.  *Id.*  Also, in several videotaped incidents involving the use of a restraint chair or four-point restraints (binding a detainee to a bed by wrists and ankles), the expert concluded that "the restraint use was excessive."  *Id.*

## Discussion

To establish § 1983 claims against the individual defendants asserting a defense of qualified immunity, Plaintiff must establish facts that "make out a violation of a constitutional right" and that "the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001). The alleged deprivations in this case are a violation of a pretrial detainee's Fourth Amendment right not to be unreasonably searched and a violation of a pretrial detainee's Fourth Amendment right not to be subjected to an excessive use of force.[4]

To establish a § 1983 claim against the County, Plaintiff must establish both that a constitutional violation occurred and that an official policy caused the violation:  "§ 1983 provides for the imposition of liability where there exists an 'affirmative' or 'direct causal' link between a municipal person's adoption or implementation of a policy and a deprivation of federally protected

---

[4]  Alternatively, Plaintiff argues in his summary judgment brief that the Due Process Clause of the Fourteenth Amendment provides the appropriate constitutional standard for his excessive force claim.

rights." *Dodds v. Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010), *cert. denied*, 131 S. Ct. 2150

(2011).

## A.      Unreasonable Search

### 1.      Constitutional Violation

The parties agree that a pretrial detainee cannot constitutionally be subjected to a strip search

without reasonable suspicion that the detainee possesses concealed weapons, drugs, or contraband.

*See Archuleta v. Wagner*, 523 F. 3d 1278, 1284 (10th Cir. 2008).[5]  As stated above, however, the

parties disagree whether Plaintiff was subjected to a "strip search" as defined by federal case law.

Defendants seem to contend that a "strip search" requires the visual inspection of a naked body, to

include genital and anal areas; Plaintiff seems to contend that the removal of a detainee's clothing

and exposure of his body to view by officers constitutes a "strip search."  Governing case law does

not define this term or support the parties' categorical approach:

> The test of reasonableness under the Fourth Amendment is not capable of
> precise definition or mechanical application.  In each case it requires a balancing of
> the need for the particular search against the invasion of personal rights that the
> search entails.  Courts must consider the scope of the particular intrusion, the manner
> in which it is conducted, the justification for initiating it, and the place in which it
> is conducted.

*Bell v. Wolfish*, 441 U.S. 520, 559 (1979); *see Archuleta*, 523 F.3d at 1283; *Nelson v. McMullen* 207

F.3d 1202, 1206 (10th Cir. 2000).

Thus, under the balancing approach of the Fourth Amendment, the "test is fact-specific,

'measured in objective terms by examining the totality of the circumstances.'"  *Nelson*, 207 F.3d at

1206 (quoting *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)).  For example, in *Boren v. Deland*, 958

---

[5]  In addition, the law distinguishes "between detainees awaiting bail and those entering the jail
population when evaluating the necessity of a strip search under constitutional standards."  *Archuleta*, 523
F.3d at 1284 (internal quotation omitted).  However, the parties do not address this factor and, instead, focus
on whether Plaintiff was strip-searched, as discussed below.

F.2d 987 (10th Cir. 1992), a prison visitor was required to undress before visiting her husband in order to determine whether her clothing complied with the prison's dress policy; the visitor removed only her shoes and jeans in the presence of an officer and two witnesses, but the court of appeals considered this a "strip search" because the visitor "was forced to disrobe." *See id.* at 988 & n.1. On the other hand, the court of appeals found no Fourth Amendment violation or "strip search" in the application of a jail policy that required all detainees to "disrobe to their undergarments in order to change into jail garb" before being placed in a holding cell; the disrobing occurred in "a private room, accompanied by an officer of the same sex." *See Morreale v. City of Cripple Creek*, No. 96-1220, 1997 WL 290976, *7 (10th Cir. May 27, 1997).[6] Other federal appellate courts have found "the incidental observation of the body of an arrestee [including genitals] during a required clothing exchange, in the manner described by plaintiffs, is not an unreasonable search under the Fourth Amendment." *See Kelsey v. County of Schoharie*, 567 F.3d 54, 64 (2d Cir. 2009); *see also Stanley v. Henson*, 337 F.3d 961, 967 (7th Cir. 2003) (an observed clothing exchange, which exposed a female detainee's breasts but was not an intrusive search, was found to be reasonable). The court in *Kelsey* noted that none of the plaintiffs "was asked to manipulate his body in any way or to assume any particular position" and "was not required to move or display his body in any particular way." *See id.* at 63.

Turning to the facts of this case, the Court finds that genuine disputes of material facts prevent a determination as a matter of law of the constitutionality of the "dress out" procedure to which Plaintiff was subjected during the booking process at the jail. It is undisputed that Plaintiff's clothing, including underwear, was forcibly removed by two officers – an experience that, like a

---

[6] All unpublished opinions are cited pursuant to Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1.

strip search, could be considered "an invasion of personal rights of the first magnitude." *Chapman v. Nichols*, 989 F.3d 393, 395 (10th Cir. 1993). It is disputed, however, whether the officers' removal of Plaintiff's street clothes was a justifiable consequence of his refusal to cooperate with jail procedures. Further, assuming Plaintiff's "dress out" was incident to a clothing exchange policy, the record does not describe the jail's policy requiring detainees to change clothing, and Defendants do not articulate the institutional concerns that may justify the policy. In short, on the record presented, the reasonableness of Plaintiff's forced "dress out" cannot be determined.

Noticeably absent from Plaintiff's argument regarding the search, however, is any legal basis for imposing liability on Sgt. Stanford for any constitutional violation that occurred. The law is clear that an individual's liability under § 1983 must be based on either personal involvement in the unconstitutional conduct or supervisory liability for an actor's conduct. *See Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011). Because the record is clear that Sgt. Stanford did not personally participate in the removal of Plaintiff's clothes, the Court assumes that Plaintiff's theory of liability with regard to Sgt. Stanford rests on her role as Officer Urioste's supervisor. The court of appeals recently explained that "[s]upervisory liability 'allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, [or] implements . . . a policy . . . which subjects, or causes to be subjected that plaintiff to the deprivation of any rights . . . secured by the Constitution." *Brown*, 662 F.3d at 1163-64 (quoting *Dodds*, 614 F.3d at 1199). Thus, "to establish supervisory liability, a plaintiff must show that '(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.'" *Id*. at 1164 (quoting *Dodds*, 614 F.3d at 1199). The Court finds that

Plaintiff has failed to identify any facts that would establish a basis for imposing supervisory liability against Sgt. Stanford for any unreasonable search.

Therefore, the Court finds that only Sgt. Stanford is entitled to summary judgment on the ground that Plaintiff has failed to establish a constitutional violation arising from his "dress out."

## 2. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  When qualified immunity is claimed by a defendant, a court must undertake a two-part inquiry:

> First, a court must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right.  Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct.

*Id*. at 232 (citations omitted); *see Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "To be clearly established, the contours of a right must be 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).  "[T]here need not be precise factual correspondence between earlier cases and the case at hand, because 'general statements of the law are not inherently incapable of giving fair and clear warning . . . .'" *Id*. at 913-14 (quoting *Hope*, 536 U.S. at 741).  To show that a legal right is clearly established, a plaintiff may demonstrate the same "by reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Id*. at 914; *see Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007) (en banc).

10

In this case, Officer Urioste has timely raised the defense of qualified immunity, and he seeks summary judgment based on a lack of legal authority holding that a forced "dress out" or clothing change constitutes an unconstitutional search. To overcome this argument, Plaintiff relies on cases establishing the unconstitutionality of various strip search policies to demonstrate that his right not to be strip-searched was clearly established.[7] Two of the cited cases, *Archuleta v. Wagner*, 523 F. 3d 1278, 1284 (10th Cir. 2008), and *Stearns v. Clarkson*, 615 F.3d 1278 (10th Cir. 2010), were decided after Plaintiff's detention in March, 2008, and could not have guided the officers' conduct.[8] However, the underlying legal principles were firmly established by prior decisions. In fact, the court of appeals expressly held in *Chapman v. Nichols*, 989 F.2d 393 (10th Cir. 1993), also cited by Plaintiff, that a blanket strip search policy applied to minor offenders was plainly unlawful in 1992, even though the searches were conducted in private and did not include body cavity inspections.

Defendants argue, correctly, that cases prohibiting routine strip searches of jail detainees during the booking process are factually distinguishable. Plaintiff was not subjected to a "strip search" of the sort discussed in these cases, in which detainees are required to remove their clothes and stand for visual inspection of their naked bodies by a detention officer. *See Chapman*, 989 F.2d at 394. The undisputed facts of this case indicate that Plaintiff was subjected to a "dress out" procedure after he was uncooperative with the booking officer. Setting aside the issue of whether excessive force was used, there is no indication that Plaintiff's body was visually inspected by the officers performing the procedure, only that Plaintiff's bare body was exposed to the male officers

---

[7] Plaintiff also cites a recent Supreme Court case regarding school officials' strip search of a student, *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 129 S. Ct. 2633, 2641 (2009). This case is factually inapposite, and post-dates the events in the present case.

[8] Plaintiff also cites a Ninth Circuit case, *Giles v. Ackerman*, 746 F.2d 615 (9th Cir. 1984), which was recently overruled by the court sitting en banc. *See Bull v. City of San Francisco*, 595 F.3d 964 (9th Cir. 2010).

while he was lying face-down on a cell floor.  Plaintiff was left alone to change into the jail garb that

the officers provided when they exited the cell.  Plaintiff provides no legal authority that would

establish the unconstitutionality of this procedure at the time it was performed.

Notwithstanding Plaintiff's failure to provide legal authorities that correspond factually with

the circumstances presented, the Court finds that general Fourth Amendment principles  make clear

that the forcible removal of Plaintiff's clothing to expose his naked body was a significant intrusion

into his personal privacy.  Fourth Amendment law is also clear that such an intrusion must be

justified by some countervailing governmental interest.  On the existing summary judgment record,

the officers' justification for stripping Plaintiff of his clothes is factually disputed.  Plaintiff has

denied that there was any legitimate need for his change into jail clothing, and has denied that he

refused to comply with the officers' instructions to remove his street clothes.

In short, the Court finds that Plaintiff has demonstrated the existence of genuine disputes of

material facts that preclude a determination as a matter of law that Officer Urioste is entitled to

qualified immunity from liability on Plaintiff's unreasonable search claim.

### 3.    County Liability

A governmental entity may be liable when "the action that is alleged to be unconstitutional

implements or executes a policy, statement, ordinance, regulation or decision officially adopted and

promulgated by that body's officers."  *Monell v. Department of Social Servs.*, 436 U.S. 658, 690

(1978).  A governmental entity may also incur liability when an unconstitutional practice "is so

permanent and well settled as to constitute a 'custom or usage' with the force of law."  *Murrell v.*

*School Dist. No. 1*, 186 F.3d 1238, 1249-50 (10th Cir. 1999); *see Monell*, 436 U.S. at 691.  Liability

based on an unconstitutional policy or custom can be established "only when the official policy is

the 'moving force behind the injury alleged.  That is, a plaintiff must show that the [official] action

was taken with the requisite degree of culpability and must demonstrate a direct causal link between the [official] action and deprivation of federal rights.'" *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1999) (quoting *Board of County Commm'rs v. Brown*, 520 U.S. 397, 404 (1997)); *see Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002).

To establish § 1983 liability of the County for the allegedly unconstitutional search, Plaintiff relies on Officer Urioste's testimony that he performed the "dress out" procedure using a technique that he had been taught during his academy training, that he had used on numerous occasions, and that was commonly used at the jail.  Officer Urioste testified that the technique is used "if the individual continues to refuse . . . to remove his clothing," and involves two officers removing the individual's clothing themselves.  *See* Urioste Dep. [Doc. No. 144-4] 138:22-24.  During the technique, each officer "does a certain part;" the one in control of the individual's feet (in this case, Officer Sandburg) "removes the pants, underwear, socks, shoes," and the one in control of the upper body (Officer Urioste) "remove[s] the shirt."  *See id*. 139:1-6.

Based solely on this testimony, Plaintiff presents legal argument – without factual support or citation to materials in the summary judgment record – that "[t]his dress out procedure was used to punish and control detainees (labeled combative or uncooperative) by force and humiliation." *See* Pl.'s Supp. Combined Resp. Def. Sheriff Whetsel's & Okla. County's Mot. Summ. J. [Doc. No. 144].[9]  Plaintiff's implicit argument seems to be that, because detention officers are taught to utilize a standard "dress out" technique, the County has an established policy of permitting the

---

[9] Plaintiff's argument overstates the summary judgment record and cites evidentiary materials, such as pages of deposition testimony, that are not contained in Plaintiff's supporting exhibits.  These record omissions were expressly noted by Defendants in their reply briefs, but Plaintiff has made no timely request to correct or supplement his exhibits.  Thus, the Court disregards all arguments that are factually unsupported.

technique to be used in an unconstitutional manner.  This argument is unsupported by legal authority or the case record.

Further, research reveals that the court of appeals has previously affirmed a grant of summary judgment to officials sued under § 1983 for enforcing a jail policy prohibiting street clothes and forcibly removing the clothes of a detainee who refused to comply with instructions to undress.  *See Fillmore v. Eichkorn*, 891 F. Supp 1482, 1494 (D. Kan. 1995), *aff'd*, No. 95-3195, 1996 WL 821189 (10th Cir. 1996).  Thus, it appears that a clothing removal policy is not inherently unconstitutional, but rather, its constitutionality depends on the factual circumstances of its application in a particular case.  Accordingly, in this case, the mere fact that the County had a standard procedure for implementing a clothing removal of a noncompliant detainee does not, by itself, establish the existence of an unconstitutional policy that caused Plaintiff to be subjected to an unreasonable search.  In short, the Court finds that Plaintiff has failed to make a minimally sufficient showing of an established jail policy or custom that caused him to be "dressed out" in violation of the Fourth Amendment.

For these reasons, the Court finds that Plaintiff has failed to demonstrate the existence of genuine issues of material facts concerning his claim that the County and Sheriff Whetsel should be liable for an unconstitutional search policy or custom.  Therefore, the County and Sheriff Whetsel are entitled to summary judgment on Plaintiff's § 1983 claim based on an unconstitutional search.

**B.      Excessive Force**

  **1.      Constitutional Violation**

Depending on factual context, a § 1983 excessive force claim "can be maintained under the Fourth, Fifth, Eighth or Fourteenth Amendment . . . and each carries with it a very different legal test."  *See Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010).  Plaintiff contends, first, that the

Fourth Amendment's protection against unreasonable seizures applies to him as a pretrial detainee who had not been formally charged or arraigned, and mandates an "objective reasonableness" standard. *See id.*; *see also Cavanaugh v. Woods Cross City*, 625 F. 3d 661, 664 (10th Cir. 2010). Alternatively, Plaintiff contends that the Due Process Clause of the Fourteenth Amendment protects against a use of excessive force if a specific constitutional provision, such as the Fourth or Eighth Amendment, does not apply. *See Porro*, 624 F. 3d at 1326; *see also Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003). Under either standard, Plaintiff argues that Officer Urioste's unprovoked and unnecessary use of a three-point compliance technique and gratuitous pushing of his face against the floor during the "dress out" procedure constituted an excessive use of force. Defendants offer no reply to this argument.

Upon consideration of the record viewed in the light most favorable to Plaintiff, as required by Rule 56, the Court finds that genuine disputes of material facts preclude summary judgment on Plaintiff's excessive force claim against Officer Urioste under both Fourth and Fourteenth Amendment standards. Reasonable minds could differ on the issue of whether Officer Urioste's use of force was objectively reasonable and whether the force was "inspired by malice or by unwise, excessive zeal amounting to an abuse of official power." *See Roska*, 328 F. 3d at 1243. Regarding Sgt. Stanford, however, the Court finds that Plaintiff has failed to present sufficient facts that would present a triable issue of Sgt. Stanford's liability for Officer Urioste's use of force. As discussed above, Plaintiff has failed to identify any basis for holding Sgt. Stanford personally liable or imposing supervisory liability on Sgt. Stanford for any use of excessive force by Officer Urioste.

For these reasons, the Court finds that only Sgt. Stanford is entitled to summary judgment on Plaintiff's claim of § 1983 liability for an excessive use of force; Officer Urioste is not entitled to summary judgment on this claim.[10]

## 2. County Liability

As stated above, in addition to proving that a constitutional violation occurred, Plaintiff must establish a basis to impose § 1983 liability on the County for any excessive use of force by Officer Urioste.  In response to Defendants' summary judgment motion, Plaintiff acknowledges that the jail had sufficient written policies regarding the use of force by officers, but he argues that "the true custom and policy of the [jail] is to condone excessive uses of force which are outside the written policy."  *See* Pl.'s Supp. Combined Resp. Def. Sheriff Whetsel & Okla. County's Mot. Summ. J. [Doc. No. 144] at 26.  Plaintiff's sole support for this argument is the DOJ report expressing concern about the prevalent use of force to control inmates housed in crowded conditions with low staffing levels, and an excessive use of physical restraints.[11]  The Court finds no direct correlation between the concerns expressed in the DOJ report and the circumstances under which Plaintiff allegedly was exposed to an excessive use of force by Officer Urioste.  Accordingly, the Court finds that Plaintiff has presented insufficient facts to show a jail custom or practice condoning the excessive use of force, or to suggest a causal link between any such custom and Plaintiff's alleged attack by Officer Urioste.

---

[10]  Both individual defendants admit that the law regarding the excessive use of force is clearly established.  Neither seeks qualified immunity on this basis with regard to Plaintiff's excessive force claim, and therefore, the Court does not address this issue.

[11]  Plaintiff makes other factual arguments that overstate, or are unsupported by, the summary judgment record. For example, contrary to Plaintiff's argument, Officer Urioste did not testify that the degree of force alleged by Plaintiff (which he denied) was "routine practice" and part of his academy training.  *See* Pl.'s Supp. Combined Resp. Def. Sheriff Whetsel & Okla. County's Mot. Summ. J. [Doc. No. 144] at 26-27. Plaintiff also cites a page of the deposition transcript that is not provided.  *See supra* note 9.

In short, the Court finds that Plaintiff has failed to demonstrate the existence of genuine issues of material facts concerning his claim that the County should be held liable for an unconstitutional policy or custom that allegedly caused Plaintiff's physical injuries.  Therefore, the County and Sheriff Whetsel are entitled to summary judgment on Plaintiff's § 1983 claim based on an excessive use of force.

### Conclusion

For the reasons stated above, all movants except Officer Urioste are entitled to summary judgment on all claims asserted in the First Amended Complaint.  Genuine disputes of material facts preclude summary judgment on Plaintiff's § 1983 claims against Officer Urioste.

IT IS THEREFORE ORDERED that Defendant Oklahoma County Board of County Commissioners' Motion for Summary Judgment [Doc. No. 130], Defendant John Whetsel's Motion for Summary Judgment [Doc. No. 131], and Defendant Vicki Stanford's Individual Capacity Motion for Summary Judgment [Doc. No. 132] are GRANTED; but Defendant Thomas Urioste's Individual Capacity Motion for Summary Judgment [Doc. No. 133] is DENIED.

IT IS SO ORDERED this 30th day of March, 2012.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE